The CITY OF HOUSTON, Texas and
Larry A. Miller, Appellants,

v.

WEST CAPITAL FINANCIAL
SERVICES CORP.,
Appellee.

No. 01–96–01089–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 22, 1998.

Rehearing Overruled March 4, 1998.

Bertrand L. Pouteau, II, Houston, for Appellants.

Richard T. Howell, Jr., David A. Furlow, Jr., Houston, for Appellee.

Before MIRABAL, WILSON and TAFT, JJ.

## OPINION

MIRABAL, Justice.

This is an interlocutory appeal from the denial of a motion for summary judgment filed by the City of Houston and a city employee based on a claim of judicial immunity. We affirm.

Appellant, Larry A. Miller, former chief clerk of Houston's municipal courts, was responsible for administering a contract between the City of Houston and appellee, West Capital Financial Services Corp. (Westcap). When the City did not renew its contract with Westcap, the corporation sued Miller and the City.

The 1993 contract provided for Westcap to collect delinquent fees and fines owed to the city. The contract reads in part as follows:

Contractor shall provide all labor, material, and supervision necessary to perform services reasonable and necessary for collection of the City's delinquent traffic, non-traffic and parking ticket fees on *Warrant Backlog Cases* and to provide the City with a computer system that will allow it to access Contractor's Account information and update the City's computer system and files. . . .

*Warrant Backlog Cases* means unpaid traffic, non-traffic and parking tickets on file with the Municipal Courts Administration Department (MCAD) which meet the following criteria:

1. Have been delinquent 240 days;

2. Have no pending court setting;

3. Have no bonds posted;

4. No arrests have been made on case;

5. a) Warrants of arrest have been issued by MCAD and have been signed by a Municipal Courts Judge for unadjudicated traffic or non-traffic delinquent cases, or b) Capias Pro Fine has been issued and signed by a Municipal Courts Judge for an adjudicated, unpaid delinquent case, or c) unadjudicated delinquent parking tickets, traffic or nontraffic cases wherein no warrants of arrest have been issued;

6. Are not in "hold" or "suspense" status;

7. The Director has determined that the Municipal Courts Administration Departments' initial in-house and other collection efforts by an authorized collection agency have been unsuccessful;

8. Such cases have been designated as "Warrant Backlog Cases" by the Director or his Designee and deemed eligible for assignment to the Contractor named in this Contract; and

9. Are not currently assigned to any other Contractor.

The initial contract term was for one year and Miller had sole discretion to renew the contract for successive one-year terms. The contract required Miller to give Westcap written notice of his intent to renew, at least 60 days before each term expired. At the end of the second year, Miller did not renew Westcap's contract. Westcap alleges Miller imposed stringent requirements on Westcap

that he did not impose on Westcap's rival, Municipal Collections, Inc. (MCI), because Miller's sister-in-law worked for MCI. Westcap also contends Miller unfairly refused to renew the contract after it had complied with these requirements. Westcap sued the City and Miller, alleging breach of contract, tortious interference with contract, conversion, conspiracy, common-law fraud and misrepresentation, negligent misrepresentation, and breach of the duty of good faith and fair dealing.

The City and Miller moved for partial summary judgment on all of the tort claims,[1] based on the affirmative defense of judicial immunity.[2] The trial court overruled the motion.

■ Although a party may not usually appeal denial of a motion for summary judgment, this Court considers such an appeal when the motion is based on a statutory immunity defense in a case such as this. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1998); *City of Houston v. Kilburn,* 849 S.W.2d 810, 811 (Tex.1993).

In points of error one and two, the City and Miller assert the trial court erred in overruling the motion for partial summary judgment because all tort claims arose out of actions Miller took as part of his duties as chief clerk. They argue that Miller was entitled to derived judicial immunity.

■ The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). To prevail as a movant for summary judgment, a defendant must either (1) disprove at least one element of plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause of action. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

■ Judges enjoy absolute judicial immunity from liability for judicial acts, no matter how erroneous the act or how evil the motive, unless the act is performed in the clear absence of all jurisdiction. *Turner v. Pruitt,* 161 Tex. 532, 342 S.W.2d 422, 423 (1961); *Delcourt v. Silverman,* 919 S.W.2d 777, 781 (Tex.App.—Houston [14th Dist.] 1996, writ denied). The waiver of immunity under the Texas Tort Claims Act does not apply to:

a claim based on an act or omission of a court of this state or any member of a court of this state acting in his official capacity or to a judicial function of a governmental unit. "Official capacity" means all duties of office and includes administrative decisions or actions.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.053(a) (Vernon 1997).

■ When judges delegate their authority or appoint others to perform services for the court, the judge's judicial immunity may follow the delegation or appointment. *Clements v. Barnes,* 834 S.W.2d 45, 46 (Tex.1992); *Byrd v. Woodruff,* 891 S.W.2d 689, 707 (Tex. App.—Dallas 1994, writ denied). This type of immunity is referred to as derived judicial immunity. *Clements,* 834 S.W.2d at 46; *Delcourt,* 919 S.W.2d at 782; *Byrd,* 891 S.W.2d at 707.

■ Courts use the federally conceived "functional approach" to determine if a particular person enjoys derived judicial immunity. *Delcourt,* 919 S.W.2d at 782; *see also Imbler v. Pachtman,* 424 U.S. 409, 430–431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); *Hodorowski v. Ray,* 844 F.2d 1210, 1213–15 (5th Cir.1988). Under the functional approach, we determine whether the activities of the party invoking immunity are "intimately associated with the judicial process," *i.e.,* whether the party is functioning as an integral part of the judicial system or as an "arm of the court." *Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983); *Delcourt,* 919 S.W.2d at 782; *Spencer v. City of Seagoville,* 700

---

**1.** Westcap's breach of contract claim was not addressed in the motion for partial summary judgment.

**2.** No other type of immunity was asserted as grounds for summary judgment.

S.W.2d 953, 958–59 (Tex.App.—Dallas 1985, no writ). We determine whether an act is "judicial" in nature by its character, not by the character of the agent performing it. *Byrd*, 891 S.W.2d at 707. The key consideration in determining whether an officer is entitled to judicial immunity is whether the officer's conduct is a normal function of the delegating or appointing judge. *Id.*

Officers of the court, such as court clerks, law clerks, bailiffs, constables issuing writs, and court-appointed receivers and trustees have been accorded derived judicial immunity because they function as an arm of the court. *See Delcourt*, 919 S.W.2d at 782 (court appointed psychologist and guardian ad litem appointed under article 11.10 of the Texas Family Code); *Wiggins v. New Mexico State Supreme Court Clerk*, 664 F.2d 812, 815 (10th Cir.1981) (state supreme court justices and clerk); *Spencer*, 700 S.W.2d at 959 (court clerk); *but see Byrd*, 891 S.W.2d at 708 (refusing to extend immunity to court-appointed guardian ad litem under Tex. R.Civ.P. 173 who acts independently of the court, not as an agent of the court).

■ In the present case, Miller relies principally upon his title as "Chief Clerk" to argue that his actions are "judicial in nature." Westcap contends judicial immunity does not arise merely through a job title, but attaches only to "judicial" functions. We agree.

It is true that the collection of fines and fees is a normal function of the chief clerk of the Houston municipal courts.[3] The summary judgment evidence established that the purpose of the contract with Westcap was to collect fines and fees, and that Miller administered the contract in his official capacity as chief clerk and director of Houston's munici-

pal courts administration. However, the Westcap contract was authorized by Houston's city council and was countersigned by the mayor of Houston and the city controller. The presiding judge of Houston's municipal courts, the Hon. Sylvia Garcia, testified by deposition that although there are a number of functions performed by the chief clerk that she directs and supervises, Miller's administration of the contract between the City and Westcap was not under her direction or supervision.

Clearly, Miller's administration of the Westcap collections contract is not a "normal function of the delegating or appointing judge;" therefore, it is not "judicial in nature" for purposes of the functional approach to determining the existence of derived judicial immunity. Miller was not entitled to summary judgment.

■ Under the theory of *respondeat superior*, the liability of a governmental unit is derived from the liability of the government official. *City of Columbus v. Barnstone*, 921 S.W.2d 268, 272 (Tex.App.—Houston [1st Dist.] 1995, no writ). Because the summary judgment evidence does not establish that Miller is entitled to derived judicial immunity, the City is likewise not entitled to summary judgment. *Id.* at 274.

We overrule points of error one and two.

We affirm the judgment.

---

3. Miller's statutory duties as Chief Clerk are set out as follows:

Sec. 16–21. Position created; appointment, term and duties.

(b) The duties of the clerk of the municipal courts shall be, in part, to administer oaths and affidavits, make certificates, affix the seal of such courts thereto, keep minutes of the proceedings of such courts, issue all processes and do generally and perform all things and acts usually or necessarily performed by clerks of courts in connection with the business thereof. *He shall also act as police clerk, and do and perform the duties ordinarily required of, and preformed by such police clerk; he shall make and have charge and control of all collections made by the police department arising from fines, costs and all other sources, and shall safely keep all moneys so collected, and daily deposit the same with the city tax-assessor, together with a daily report of such collections, and in addition to the duties herein enumerated,* **he shall do and perform such additional duties as may be required of him by the city council.** Houston, Tex., Code § 15–13 (1968); Ordinance 78–234, § 2, (Feb. 9, 1978) (emphasis added).