**DALLAS COUNTY, Texas, Petitioner,**

v.

**Sandra HALSEY, Respondent.**

No. 01–0784.

Supreme Court of Texas.

Argued Sept. 4, 2002.

Decided Oct. 24, 2002.

Rehearing Denied Nov. 21, 2002.

---

**30.** *See* Tex.R.App. P. 52.8(c).

Moira A. Parro, Asst. Dist. Atty., William T. Hill, Dallas County Criminal Dist. Atty's Office, John Clark Long, IV, Office of Dallas County Dist. Atty., and Grant Hugh Brenna, Asst. Dist. Atty., Dallas, for Dallas County, Texas.

Cynthia McCrann Wheless, Plano, for Sandra Halsey.

Justice HANKINSON delivered the opinion of the Court.

In this cause, we decide whether a court reporter is absolutely immune from liability for errors committed in the preparation of a reporter's record. Petitioner Dallas County sued respondent Sandra Halsey, a certified court reporter, to recover funds it paid her to prepare a reporter's record of a trial. Halsey moved for summary judgment, asserting the defense of judicial immunity, as derived from her role as the official court reporter. The trial court denied the motion. The court of appeals reversed and rendered judgment for Halsey concluding that because "an official court reporter functions as an integral part of the court ... Halsey is entitled to summary judgment based on her affirmative defense of judicial immunity." 68 S.W.3d 81, 86. We disagree with the court of appeals and hold that because court reporters do not engage in a discretionary function or exercise judgment comparable to that of a judge while preparing a reporter's record, they are not entitled to derived judicial immunity for that function. Therefore, we reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings.

Halsey was the official court reporter for Dallas County Criminal District Court No. 3. The County paid Halsey a regular salary for her services as a court reporter. As part of her official duties, she recorded the trial of the case *State of Texas v. Darlie Lynn Routier.* Halsey also prepared the reporter's record of the *Routier* trial upon Dallas County's request. For preparing this record, Dallas County paid Halsey an additional approximately $63,000 based on invoices she submitted. After Halsey prepared and filed the *Routier* transcript, the County hired another court reporter to review her work. The second court reporter later testified to finding approximately 18,000 errors in the 6,000 pages of the record.

Dallas County then sued Halsey for fraud, breach of contract, and violations of the Texas Deceptive Trade Practices Act, and sought the return of the $63,000. Halsey moved for summary judgment asserting that as an official court reporter, she was entitled to derived judicial immunity. The trial court denied the motion, and she filed an interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(5) (permitting a person to appeal from an interlocutory order of a district court that denies a motion for summary judgment based on an assertion of immunity). The court of appeals reversed and rendered judgment that Halsey was entitled to derived judicial immunity and that Dallas County take nothing. 68 S.W.3d at 86. We granted Dallas County's petition for review to determine whether the doctrine of derived judicial immunity applies to Halsey's prep-

aration of the reporter's record in the *Routier* case.

When entitled to the protection of derived judicial immunity, an officer of the court receives the same immunity as a judge acting in his or her official judicial capacity—absolute immunity from liability for judicial acts performed within the scope of jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (stating that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871))); *Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422, 423 (1961) (noting that in judicial proceedings in which the court has jurisdiction, a judge is immune for his or her actions). While protecting the individual judge, this policy likewise serves to protect the public "whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 349 n. 16, 20 L.Ed. 646 (1871); *see Delcourt v. Silverman*, 919 S.W.2d 777, 781 (Tex.App.-Houston [14th Dist.] 1996, writ denied). The policy reasons for judicial immunity are also implicated when a judge delegates or appoints another person to perform services for the court or when a person otherwise serves as an officer of the court. *See Delcourt*, 919 S.W.2d at 782. In this circumstance, the immunity attaching to the judge follows the delegation, appointment, or court employment. *See Clements v. Barnes*, 834 S.W.2d 45, 46 (Tex.1992); *City of Houston v. West Capital Fin. Servs. Corp.*, 961 S.W.2d 687, 689 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.); *Byrd v.*

*Woodruff*, 891 S.W.2d 689, 707 (Tex.App.-Dallas 1994, writ dism'd by agr.). The person acting in such a capacity also enjoys absolute immunity, known as derived judicial immunity. *See Clements*, 834 S.W.2d at 46; *Delcourt*, 919 S.W.2d at 782.

Texas courts have recognized that derived judicial immunity applies in certain contexts. In *Clements v. Barnes*, 834 S.W.2d 45, 46 (Tex.1992), this Court granted derived judicial immunity to court-appointed bankruptcy trustees, concluding that they function as an "arm of the court," and thus protection from liability was appropriate. We did not, however, elaborate on or discuss how to determine when a court officer is entitled to the benefits of derived judicial immunity.

In *Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex.App.-Houston [14th Dist.] 1996, writ denied), the Fourteenth Court of Appeals followed the analysis of the federal courts and used the "functional approach" in determining whether a party receives the benefit of derived judicial immunity. This functional approach looks to whether the person seeking immunity is intimately associated with the judicial process and if that person exercises discretionary judgment comparable to that of the judge. *Id.* ("[A] party is entitled to absolute immunity when the party is acting as an integral part of the judicial system or an 'arm of the court.' ").

*Delcourt* involved a child-custody dispute. After a mother's efforts to modify custody of her child proved unsuccessful, she sued the court-appointed psychologist and the guardian ad litem alleging that their participation in the trial gave rise to various tort claims. The defendants answered that they were entitled to derived judicial immunity. The trial court agreed and granted their summary-judgment motions. In affirming the summary judgment on appeal, the court of appeals first

extended derived judicial immunity to the psychologist who had been appointed under Texas Rule of Civil Procedure 167a(d)(1).[1] The court of appeals reasoned that mental-health professionals appointed by the trial court to examine the child and parents in a custody proceeding are acting as a factfinder for the court. *Delcourt,* 919 S.W.2d at 782–83. Thus, "[t]he court relies on the professional to provide information essential to the decision-making process. Without the protection of absolute immunity, such professionals would be, at the very least, reluctant to accept these appointments. This would in turn inhibit judges from performing their duties." *Id.* Because the judge appointed the psychologist to evaluate the physical and emotional state of the parties so as to better inform the custody decision, the psychologist acted as a "functionary" of the court. *Id.* Further, the court of appeals concluded that the guardian ad litem was entitled to judicial immunity because she was appointed under Texas Family Code § 11.10 [2] to represent the best interests of the child and provide the court with impartial recommendations. *Id.* at 784–86. In this context, the guardian ad litem acted as an extension of the court in that the purpose of her appointment was to conduct an investigation in order to inform the judge's ultimate custody determination. *Id.* at 786. Thus, the court of appeals concluded that the guardian ad litem's appointment "contemplated that she would function on behalf of the court" and that therefore she was entitled to absolute immunity. *Id.*

In another context, the Fifth Court of Appeals in *Byrd v. Woodruff,* 891 S.W.2d 689, 707 (Tex.App.-Dallas 1994, writ dism'd by agr.), held that a guardian ad litem appointed under Texas Rule of Civil Procedure 173 to represent a minor during settlement proceedings in a personal-injury suit acted as the minor's personal representative, not as an arm of the court. Pursuant to rule 173, the guardian ad litem was appointed because of a conflict between the minor and the next friend. The court of appeals reasoned that because the court cannot serve as an advocate for any party and, thus, cannot represent the minor's interests, the guardian ad litem assumes the role of the next friend and serves as the minor's advocate. *Id.* at 708. The court noted that the guardian ad litem "conducts an independent investigation, evaluates the benefits of settling, and determines the best interests of the minor to communicate, as the minor's personal representative, his recommendations to the court." *Id.* The court therefore concluded that the guardian ad litem in this context, as the minor's representative, did not act on behalf of or as a factfinder for the court and was not entitled to absolute immunity. *Id.* In short, as applied in Texas, the functional approach in applying derived judicial immunity focuses on the nature of the function performed, not the identity of the actor, and considers whether the court officer's conduct is like that of the delegating or appointing judge. *See City of Houston,* 961 S.W.2d at 690; *Delcourt,* 919 S.W.2d at 782–83, 785–86; *Byrd,* 891 S.W.2d at 707.

Against this backdrop, Halsey argues that a court reporter should be absolutely immune for acts performed in his or her official capacity. She notes that an official court reporter is a sworn officer of the court and holds office at the pleasure of

1. This rule was repealed in 1998 and is now found in substantially the same form at Texas Rule of Civil Procedure 204.4(a).

2. This statute was repealed in 1995 and is now codified at Texas Family Code § 107.001, which gives a court the general power to appoint a guardian ad litem.

the court. *See* Tex. Gov't Code § 52.041. The court reporter performs tasks vital to the judicial process, such as taking full notes of the proceedings—including objections and court rulings—marking and filing exhibits, and preparing requested transcripts of the reported evidence. *See id.* § 52.046. Halsey asserts that the services the reporter furnishes in the courtroom and the later preparation of the record are for the benefit of the court. Without a proper record, for example, a party may not present a complaint for appellate review. *See* Tex.R.App. P. 34.1. Thus, she argues, a court reporter's duties are essential to the judicial process.

Although the County agrees that the duties of the court reporter are indeed critical to judicial proceedings and require a high degree of skill, it asserts that a court reporter does not exercise discretion in carrying out his or her duties. The County further contends that as Halsey provided the reporter's record at its request and by contract, it was outside the scope of her official duties to the court. *See Hatch v. Davis,* 621 S.W.2d 443, 446 (Tex.Civ.App.-Corpus Christi 1981, writ ref'd n.r.e.) (holding that a court reporter can recover attorney's fees for a suit involving the preparation of a record because the claim was for personal services). We agree with Dallas County that when preparing a record, a court reporter does not exercise the kind of discretion that would entitle him or her to derived judicial immunity.

In *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993), the United States Supreme Court resolved a circuit conflict regarding the extent of judicial immunity granted to court reporters—some circuits had extended absolute immunity to court reporters while others afforded them qualified immunity. *See id.* at 432 & 432 n. 3, 113

S.Ct. 2167 (citing cases). Although the circuit decisions involved various court-reporter functions, *Antoine* involved the court reporter's potential liability for the courtroom recording of judicial proceedings. In that context, the Court was unwilling to extend the protection of judicial immunity to court reporters and used the functional approach to determine that court reporters do not exercise discretion or engage in judicial decisionmaking processes. *Id.* at 436–37, 113 S.Ct. 2167. The Court characterized judicial immunity as extending only to officials whose "judgments are 'functionally comparable' to those of judges" and who " 'exercise a discretionary judgment' as a part of their function." *Id.* at 436, 113 S.Ct. 2167 (citations omitted). The Court further noted that the application of the functional approach in granting judicial immunity does not hinge on the importance of the court officer's duty to the judicial process, but rather focuses on the amount of subjective discretion that the officer exercises in the performance of a particular job. *See id.* at 436–37, 113 S.Ct. 2167. The Court framed its decision broadly and held that court reporters do not exercise the kind of judgment that is protected by the doctrine of judicial immunity. *Id.* at 437, 113 S.Ct. 2167; *see also State ex rel. Philyaw v. Williams,* 190 W.Va. 272, 438 S.E.2d 64, 67 (1993) (recognizing *Antoine* and cautioning that court reporters do not enjoy judicial immunity under West Virginia law).

The United States Supreme Court's explication of the functional approach to derived judicial immunity in *Antoine* comports with our decision in *Clements* and the analysis that has been applied by our courts of appeals in varying contexts. *See Clements,* 834 S.W.2d at 46; *City of Houston,* 961 S.W.2d at 689–90; *Delcourt,* 919 S.W.2d at 782–83; *Byrd,* 891 S.W.2d at 707. Thus, we conclude that the functional approach should similarly guide our analy-

sis in this case as we consider whether court reporters enjoy derived judicial immunity for the preparation of a reporter's record when requested by a party.

 At the request of a party, the court reporter, like Halsey, prepares an exact copy of the proceedings. This preparation requires skill and training, but does not involve judicial decisionmaking. *See Antoine,* 508 U.S. at 435–36, 113 S.Ct. 2167 (noting that the doctrine of judicial immunity serves to protect the "independent and impartial exercise of judgment vital to the judiciary," a function that court reporters do not perform in fulfilling their duties). The preparation of the record does not necessitate the use of discretion, but is more in the nature of a ministerial or administrative task. *See id.* at 436, 113 S.Ct. 2167. This Court has determined that "[i]f an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial." *City of Lancaster v. Chambers,* 883 S.W.2d 650, 654 (Tex.1994). In preparing the record, the court reporter does not participate in the judicial decisionmaking process or exercise discretion. Therefore, when preparing a reporter's record, the court reporter cannot be construed as the functional equivalent of a judge, and the court reporter's actions do not fall under the protection of judicial immunity.

In this case, Halsey prepared the *Routier* reporter's record at the County's request. She was paid separately for this service, and completed the preparation per the terms of her contract with a party, a transaction that was separate from her official reporting responsibilities. Preparing the reporter's record did not involve any function similar to judicial decisionmaking on her part; her job was to prepare an accurate copy of the proceedings for the requesting party. In this capacity, she did not exercise discretion comparable to that of a judge. Therefore, Halsey is not entitled to derived judicial immunity for her acts in preparing the reporter's record in the *Routier* case.

Accordingly, we reverse the court of appeals' judgment and remand the cause to the trial court for further proceedings.

Justice ENOCH did not participate in the decision.