# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00491-CV

**Rhett Webster Pease and Jannell Pease, Appellants**

**v.**

**Principal Residential Mortgage, Inc.; Diana Estala Stevens; Barbara Bembry; Travis County Constable's Office; and Bob Van, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. GN103089, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Rhett Webster Pease and Jannell Pease sued Principal Residential Mortgage (Principal), its attorney Diana Estala Stevens, Justice of the Peace Barbara Bembry, the Travis County Constable's Office, and Constable Bob Vann (collectively, "appellees") for tortious interference with a contract arising out of the foreclosure sale of their property and subsequent eviction proceedings. Appellees moved for summary judgment and for an order finding appellants to be vexatious litigants. The trial court granted summary judgment in favor of appellees and found Rhett Webster Pease to be a vexatious litigant. Rhett and Jannell Pease appeal the trial court's grant of summary judgment and contend that the trial court erred in finding Pease a vexatious litigant. We will affirm.

**Factual and Procedural Background**

In 1997, appellants became delinquent in the payment of a promissary note in the original principal amount of $63,808, secured by a deed of trust on their property at 12600 Limerick Avenue in Austin, Texas. At the time of the delinquency, Principal was the owner and holder of the note.[1] After several months of delinquency,[2] in a letter dated April 10, 1997, Principal informed Rhett Webster Pease that it had approved a foreclosure action. In June 1997, the Peases filed for bankruptcy protection.

In November 1997, appellants filed suit against Principal alleging that Principal was not the holder of the note. Appellants pointed to a notation on the assignment of the note from Capital Standard Mortgage to First Bankers Mortgage Corp. stating that the assignment was "being re-recorded to correct names in which the promissory note was executed by." Appellants asserted that the addition by the county clerk of volume and page numbers, and the correction of the names on the document, rendered the assignment to First Bankers Mortgage Corp. void, therefore invalidating the subsequent assignment to Principal.

---

[1] The note was originally payable to Capital Standard Mortgage. The record reflects that in 1994, the note and deed of trust were assigned by Capital Standard Mortgage to First Bankers Mortgage Corp. First Bankers Mortgage Corp. then assigned the note and deed of trust to Principal in 1996.

[2] Correspondence between Rhett Webster Pease and Principal dating from September 1996 through April of 1997 documents a dispute in which Pease would either fail to make a payment or only send payment for the principal and interest on the note, but not the required escrow payment for taxes and insurance. Principal returned these insufficient payments to Pease, who did not submit full payment or make arrangements with Principal to pay taxes and insurance separately. In one letter, however, Pease informed Principal that he had paid his own insurance and would pay his own taxes, but he did not provide any documentation of these payments.

While appellants' suit was pending, a foreclosure sale was held on January 5, 1999, in which Principal bought the property for the amount owed on the note. In July 1999, Principal obtained a summary judgment declaring it the legal owner of the property at 12600 Limerick Avenue.

In August 1999, appellants filed suit against Principal's attorneys and the substitute trustee who conducted the foreclosure sale alleging wrongful foreclosure and various other claims based again on the contention that the notations on the assignment documents invalidated Principal's rights to the property.[3]

Also in August 1999, Principal filed a forcible detainer action in the Precinct Two Justice Court of Travis County seeking possession of the property. On August 31, 1999, Justice of the Peace Barbara Bembry awarded possession to Principal and appellants were evicted by the constable the following month.

In October 1999, appellants sought to enjoin Principal from asserting ownership of the property, alleging that the substitute trustee's deed obtained by Principal through the foreclosure sale was void *ab initio*. Principal filed a counterclaim seeking an anti-suit injunction to prevent Rhett Webster Pease from maintaining and filing further actions relating to the property. On January 31, 2000, summary judgment was granted in favor of Principal ordering that appellants take nothing and enjoining Rhett Webster Pease from maintaining any existing lawsuits and filing any new lawsuits relating to the property against Principal or its attorneys.

---

[3] The action was dismissed with prejudice in December 2001.

In March 2000, Rhett Webster Pease filed suit in federal district court against Principal, its attorneys, Judge Bembry, and every county and city employee involved in the eviction. The suit complained of a lack of due process in the eviction proceedings and alleged civil rights violations arising out of Pease's arrest during the eviction. The federal district court dismissed the suit against Principal and its attorneys characterizing the suit as "wholly frivolous" and entered judgment in favor of the other defendants.

The Travis County District Clerk's Office issued a permanent anti-suit injunction pursuant to the earlier judgment obtained by Principal; the injunction was served on Rhett Webster Pease in early September 2001. Pease responded by filing this action for tortious interference with a contract.

## Discussion

### *Summary judgment*

In their first two issues, appellants challenge the trial court's summary judgment asserting again that the assignment of the note and deed of trust was fraudulent and that Principal's actions in moving to foreclose on the property were tortious interference with a contract. They further contend that the appellees presented no evidence that would support summary judgment. Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). The standards for reviewing a motion for summary judgment are well established: (1) the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as

4

a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant seeking a traditional summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each element of an affirmative defense. *Missouri Pac. R.R. v. Lely Dev. Corp.*, 86 S.W.3d 787, 790 (Tex. App.—Austin 2002, pet. dism'd). Not until the defendant establishes a right to summary judgment does the burden shift to the plaintiff to raise a fact issue. *Id.*

Appellees assert a number of grounds supporting summary judgment. When a trial court's order granting summary judgment does not specify the grounds for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

## *Anti-suit injunction*

A trial court may issue an anti-suit injunction in order to protect a party from vexatious or harassing litigation. *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996). Pease was served an anti-suit injunction on September 5, 2001. The summary judgment granting the anti-suit injunction specifically enjoined Pease from "maintaining any existing lawsuits . . . and filing any new lawsuits, against [appellees] relating in any way to the real property located at 12600 Limerick Avenue, Austin Texas 78727 . . ." Although an injunction may be challenged as overbroad, *see Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 718 (Tex. App.—Corpus Christi

5

2001, no pet.), Pease did not appeal the judgment, and it is therefore final and binding. Appellants'

suit for tortious interference with a contract, filed fifteen days after being served with the injunction,

runs afoul of the anti-suit injunction because the contract that they allege was interfered with was

the deed of trust for the 12600 Limerick Avenue property. The lawsuit is clearly related to the

property, and therefore, summary judgment was appropriate on the grounds that the suit was barred

by the injunction.

*Res Judicata*

*Res judicata*, also known as claim preclusion, prevents relitigation of a claim or cause

of action that has been finally adjudicated in a prior suit, as well as related matters that, with the use

of diligence, could have been litigated in that suit. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d

627, 628 (Tex.1992); *Logan v. McDaniel*, 21 S.W.3d 683, 687 (Tex. App.—Austin 2000, pet.

denied). *Res judicata* defeats a claim when there is proof of: (1) a prior final judgment on the merits

by a court of competent jurisdiction; (2) identity of parties or privity with them; and (3) a second

action based on the same claims as were raised or could have been raised in the first action. *Amstadt

v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). In determining whether parties are in privity,

we examine the interests of the parties and determine if they share an identity of interests in the basic

legal right that is the subject of the litigation. *See id*. at 653. We focus on the factual basis of the

complaint to determine whether it involves the same basic subject matter. *Id*. *Res Judicata*

precludes a second action on claims that arise out of the same subject matter even if the plaintiffs

in the second action do not allege causes of action identical to those asserted in the first action. *Id*.

We find that the claims raised by appellants are barred by *res judicata*. First, there is a final judgment on the merits of appellants' claims from the November 1997 suit. Second, the parties named in all of the actions are either Principal or its lawyers, who share the same interest in defending Principal's ownership of the property, or are governmental actors, who seek to defend the legality of their actions in the foreclosure sale and eviction. Finally, the claims raised in the underlying action focus on the validity of the assignment of the note and deed of trust and are therefore based on the same basic subject matter as the prior suit. Because, with the use of reasonable diligence, the tortious interference claims raised by appellants could have been litigated in a prior suit, summary judgment was also appropriate on the grounds of *res judicata*.

<u>*Collateral Estoppel*</u>

Collateral estoppel, or issue preclusion, prevents relitigation of particular issues already resolved in a prior suit. *Logan*, 21 S.W.3d at 687. To establish the elements of collateral estoppel, a party must show that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the prior action; and (3) the parties were cast as adversaries in the prior action. *Id*. Appellants' suit meets these elements. The controlling facts concerning the validity of the assignment of the note and deed of trust were fully and fairly litigated in the November 1997 lawsuit. These facts were essential to the resolution of that case and were tested through the adversarial process. As such, summary judgment could properly by sustained on collateral estoppel grounds.

Because we hold that, as a matter of law, summary judgment was appropriate based on the anti-suit injunction as well as on *res judicata* and collateral estoppel grounds, we overrule appellants' first two issues. *See Missouri Pac. R.R.*, 86 S.W.3d at 790.

7

*Judicial and Official Immunity*

In their third issue, appellants contend that the trial court erred by granting summary judgment in favor of Justice of the Peace Bembry and Constable Vann and that "the trial court erred when it stated that Judge Bembry had authority to evict Jannell Pease from her property." Judge Bembry and Constable Vann are immune from tort liability, however, based on the doctrines of judicial and official immunity.

Judges are afforded absolute immunity from liability for judicial acts that are not performed in the clear absence of all jurisdiction, no matter how erroneous the act or how evil the motive. *Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002); *Turner v. Pruitt*, 342 S.W.2d 422, 423 (Tex. 1961). Justices of the peace enjoy the same immunity from tort liability as district judges when acting in the course of judicial proceedings. *Turner*, 342 S.W.2d at 423. As a justice of the peace, Judge Bembry had jurisdiction to preside over the forcible detainer suit and therefore possesses immunity from liability stemming from any of her actions in the case.

An officer is generally not liable for damages resulting from the execution of a writ issued by a Texas court if the officer in good faith executes the writ as provided by law and uses reasonable diligence in performing his official duties. Tex. Civ. Prac. & Rem. Code Ann. § 7.003 (West 2002); *Chambers v. Hornsby*, 21 S.W.3d 446, 448-49 (Tex. App.—Houston [14th Dist.] 2000, no pet.). An officer acts in good faith if a reasonably prudent officer, under the same or similar circumstances, would have acted in the same manner. *Richardson v. Parker*, 903 S.W.2d 801, 804 (Tex. App.—Dallas 1995, no writ) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994)). The record reflects that Constable Vann executed the writ of possession pursuant to a valid order signed by Judge Bembry. An officer who executes a facially valid writ acts in good

8

faith even when he is aware that there is a legal dispute over the matter. *See Richardson*, 903 S.W.2d at 805. The constable is not a tribunal to determine doubtful questions of fact. *Id*. Because Constable Vann diligently executed the writ of possession in good faith pursuant to a valid judgment, he is entitled to official immunity.[4] Tex. Civ. Prac. & Rem. Code Ann. § 7.003; *Chambers*, 21 S.W.3d at 448-49. We overrule appellants' third issue.

### *Vexatious Litigant*

Appellants contend in their fourth issue that the trial court erred in finding Rhett Webster Pease to be a vexatious litigant. Section 11.054 of the Texas Civil Practice and Remedies Code states that a court may find a plaintiff to be a vexatious litigant if there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant and if:

(1) the plaintiff, in the seven-year period immediately preceding the date the defendant makes the motion under Section 11.051, has commenced, prosecuted, or maintained in propria persona at least five litigations other than in small claims court that have been:

(A) finally determined adversely to the plaintiff . . .

[or]

(2) after the litigation has been finally determined against the plaintiff, the plaintiff repeatedly relitigates or attempts to relitigate, in propria persona, either:

(A) the validity of the determination against the same defendant as to whom the litigation was finally determined; or

---

[4] Because we hold that Constable Vann was entitled to official immunity, we need not determine whether the execution of the writ of possession was a deliberative or discretionary action that would entitle him to the protection of derived judicial immunity. *See Dallas County v. Halsey*, 87 S.W.3d 552, 556-57 (Tex. 2002) (court reporter not entitled to derived judicial immunity).

(B) the cause of action, claim, or controversy, or any issues of fact or law determined or concluded by the final determination against the same defendant as to whom the litigation was finally determined. . . .

Tex. Civ. Prac. & Rem. Code Ann. § 11.054 (West 2002). Appellants have relitigated their claims against Principal on a number of occasions since their initial claims were denied in the November 1997 lawsuit. Specifically, appellants sued Principal in October 1999 alleging that Principal was not the proper owner of the property at 12600 Limerick Avenue, and that same allegation forms the basis for their tortious interference claim in this suit. Because appellants, proceeding in *propria persona*, have repeatedly relitigated Principal's rights to the property after final determination, the trial court did not err in determining Rhett Webster Pease to be a vexatious litigant. *See id*. § 11.054(2). Furthermore, Rhett Webster Butler met the definition of a vexatious litigant set forth in section 11.054(1) of the Texas Civil Practice and Remedies Code because he has filed five lawsuits in the past seven years, all proceeding in *propria persona*, and all have been decided adversely to him. *See id*. § 11.054(1). We overrule appellants' fourth and final issue.

Having overruled all of appellants' issues, we affirm the judgment of the trial court.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: May 13, 2004

10