# IN THE SUPREME COURT OF TEXAS

No. 20-0291

IN RE GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS, AND
KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, RELATORS

ON PETITION FOR WRIT OF MANDAMUS

**PER CURIAM**

The Constitution is not suspended when the government declares a state of disaster. Nor do constitutional limitations on the jurisdiction of courts cease to exist. One such limitation is the requirement that a plaintiff establish standing, which is always an essential component of a court's subject-matter jurisdiction. If plaintiffs lack standing to seek orders from a court, the court lacks power to issue those orders.

Executive Order GA-13 changes the rules applicable to judges' decisions regarding pre-trial bail. It suspends certain statutes authorizing trial judges to release jail inmates with violent histories during the current state of disaster. The plaintiffs allege GA-13 is unconstitutional and exceeds the governor's statutory emergency powers. Sixteen of the plaintiffs are Texas trial judges, who allege GA-13 improperly interferes with their judicial authority to make individualized bail decisions. At their request, the trial court issued a temporary restraining order blocking enforcement of GA-13 against judges. The other plaintiffs in the case are public interest organizations and lawyer associations, and the TRO does not grant any relief as to those plaintiffs. None of the plaintiffs are inmates who cannot obtain release because of GA-13, and the plaintiffs

do not identify any such person by name.  The State filed this mandamus petition seeking review of the TRO.

On the record before the Court, we conclude the judges lack standing, which means the trial court lacked jurisdiction to order their requested relief, even temporarily.  Suspending statutes that govern judges' decisions in particular cases does not amount to a personal, legally cognizable injury against the judges.  We are aware of no precedent authorizing a judge to file suit against the executive or legislative branches to ask another judge to clarify or invalidate rules governing decisions the plaintiff judge must make.  Our adversary system of justice envisions that disputes over which rules govern court procedures like bail will be settled through proceedings involving parties with a direct stake in the outcome, proceedings such as actual bail hearings involving inmates denied release because of GA-13.  If a judge overseeing such a hearing follows the executive order (or concludes it is invalid and does not follow it), that ruling can be challenged. The question of GA-13's legal effect when weighed against the Constitution and other sources of law is a question for judges to decide when properly asked by parties to do so.  It is not a question for judges to ask other judges to decide.

We acknowledge the plaintiff judges' allegation that they face a threat of criminal prosecution if they do not follow the executive order.  Any threat to prosecute a judge for his or her judicial decisions raises grave separation-of-powers concerns.  The judges, however, do not explain why well-established principles of judicial immunity are insufficient to counter such threats. Troubling as these threatened prosecutions would be, the defendants have disclaimed any such intention, and the judges have not shown a credible threat they actually will be prosecuted. As a result, even if a threat of prosecution could give a judge standing to challenge a substantive

2

legal standard, the alleged threat of criminal prosecution in this case does not give the judges standing to seek the invalidation of GA-13. We therefore conditionally grant mandamus relief.

## BACKGROUND

Executive Order GA-13 followed the Governor's March 13, 2020 declaration of a state of disaster due to the threat of the novel coronavirus. Issued on March 29, GA-13 limits the release of inmates from jails who are "charged with, convicted of, or hav[e] a history of offenses involving physical violence or threats of physical violence." GA-13 was issued in response to the concern that "several counties are now reportedly considering the broad-scale release of arrested or jailed individuals as a result of COVID-19 . . . ." The State explains that GA-13 was intended to safeguard the public "by ensuring that alleged violent criminals are not released en masse." It partially suspends several statutory provisions "to the extent necessary" to comply with its terms. One of the suspended provisions is article 17.03 of the Code of Criminal Procedure, which grants trial courts discretion to release inmates before trial without requiring monetary bond.

On April 8, the real parties in interest, which include sixteen judges of the Harris County Criminal County Courts at Law, sued the Governor and the Attorney General. They allege that GA-13 violates two provisions of the Texas Constitution and exceeds the Governor's statutory emergency powers. According to the petition, the judges sued in their "official capacity" because they "have been directly harmed by [the] issuance of this Order and impeded from exercising their judicial authority pursuant to the Texas Constitution." The NAACP and three groups representing criminal defense attorneys are also plaintiffs in the suit. The plaintiffs requested a TRO, a temporary injunction, and permanent injunctive relief to prevent the enforcement of GA-13, as well as declaratory relief and attorneys' fees. The sixteen judicial plaintiffs specifically alleged

3

that they "are now caught between fulfilling their obligations to decide bail in individual cases as prescribed by the Constitution and Legislature, or obeying an Executive Order."

The Governor and Attorney General filed a plea to the jurisdiction on April 10. They contended that the judicial plaintiffs lacked standing because they have alleged no injury in fact. In their view, an injury characterized by one government actor encroaching on the duties of another is too generalized to create standing. And when an institutional plaintiff sues to redress an institutional injury, the entire institution must file suit, not individual members of the institution.

Late on April 10, the trial court issued a TRO restraining "[d]efendants from enforcing Executive Order GA-13 against judges." In a letter to counsel for the parties, the court specified that the TRO was granted only "as it applies to the independently elected judicial officers (the judges) who are Plaintiffs in this cause." The letter also explained that "many of the orders in Executive Order GA-13 strip away the discretion of the judiciary and potentially subject its judges to mandamus or criminal action with little or no rationale in coping with the current health crisis." The TRO was scheduled to expire on April 24. The trial court has not explicitly ruled on the relators' plea to the jurisdiction.

On April 11, the Governor and Attorney General filed a petition for writ of mandamus and motion to stay directly in this Court.[1] The petition argued that the trial court lacked the necessary subject-matter jurisdiction to issue a TRO and that the trial court abused its discretion by issuing a TRO when the plaintiffs are unlikely to succeed on the merits. We granted the motion to stay and requested expedited merits briefing, which the parties have promptly and ably provided.

---

[1] Because this is a matter of state-wide importance requiring immediate attention, the relators' decision to bypass the court of appeals is warranted. *See Perry v. Del Rio*, 66 S.W.3d 239, 257 (Tex. 2001).

ANALYSIS

The April 10 TRO restricted enforcement of GA-13 only "against judges." The trial court's letter to counsel explained that "in this ruling, the [trial court] need not reach other issues regarding standing of the organizational parties and the like and those issues may also be argued at the hearing on Temporary Injunction." Standing is specific to each individual plaintiff and to each of the plaintiff's individual claims. *Heckman v. Williamson County*, 369 S.W.3d 137, 153 (Tex. 2012) ("Thus, each party must establish that he has standing to bring each of the claims he himself alleges—meaning the court must assess standing plaintiff by plaintiff, claim by claim."). Because the trial court implicitly based its ruling on a conclusion that the sixteen judges had standing, declined to rule on the other plaintiffs' standing, and granted relief only as to judges, we likewise consider only the standing of the judicial plaintiffs.

Standing is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440, 443 (Tex. 1993). The Texas standing doctrine

> derives from the Texas Constitution's provision for separation of powers among the branches of government, which denies the judiciary authority to decide issues in the abstract, and from the open courts provision, which provides court access only to a "person for an injury done him."

*Meyers v. JDC/Firethorne, Ltd*., 548 S.W.3d 477, 484 (Tex. 2018) (citing TEX. CONST. art. I, § 13; *Tex. Ass'n of Bus*., 852 S.W.2d at 443–44). The Texas standing requirements parallel the federal test for Article III standing, which provides that "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Heckman*, 369 S.W.3d at 154 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

The United States Supreme Court has articulated the three elements of standing, which have been adopted by this Court:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted); *see also Heckman*, 369 S.W.3d at 154–55 (quoting same). The Texas injury-in-fact analysis similarly requires that the plaintiff suffer "personal" injury. *Heckman*, 369 S.W.3d at 155.

We have also recognized the United States Supreme Court's holding that "[w]hen the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) . . . depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Meyers*, 548 S.W.3d at 485–86 (quoting *Lujan*, 504 U.S. at 561). Thus when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*" other than the plaintiff, then "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (citations omitted).

The Governor and Attorney General argue that the sixteen judicial plaintiffs lack standing. In their view, a theory of injury based on one government actor usurping another actor's authority is too generalized to confer standing to sue. As the State sees it, even if GA-13 may impose legally cognizable personal injury on pretrial arrestees, the same cannot be said for judges. To the extent the judges seek standing in their institutional capacities, the State contends, standing is only

6

conferred when the entire institution sues, not individual members. Further, the State argued that any procedural complications in the court system created by GA-13 are no different from procedural changes enacted by the Legislature under less unusual circumstances. Judges would not normally have standing to personally challenge acts of the Legislature that change rules the judges must apply in their courtrooms; likewise, the State contends, they lack standing to challenge GA-13.

The real parties in interest, a coalition that includes the judicial plaintiffs, respond that the trial court correctly determined the sixteen judges have standing because GA-13 deprives them of the judicial discretion to consider pretrial release granted by the Texas Constitution. Specifically, they allege GA-13 causes injury to each judge by preventing his or her exercise of the constitutional authority to determine bail. This injury is ongoing because GA-13 has slowed down proceedings and created confusion in the judges' courtrooms. Next, the real parties contend the judges must choose between applying a federal consent decree, which mandates individual assessments when considering release on personal bonds, and the Governor's order, which prohibits all discretion. The real parties also assert that, given the Governor's stated intent to enforce the executive order, he may order the judges' arrest under Texas Government Code section 418.173. The real parties similarly interpret the Attorney General's Twitter statement that he "will not stand for any action" not in compliance with GA-13 as a potential threat of criminal prosecution. To underscore these concerns, they point to instances of lawyers from the Attorney General's Office attending the judges' pretrial proceedings.

Having considered these arguments, we conclude the judicial plaintiffs have not alleged the personal, legally cognizable injury required for standing. The judicial plaintiffs sued to correct

an alleged trespass by the executive branch on powers assigned to the judiciary. The United States Supreme Court has prescribed caution when determining questions of standing in lawsuits questioning the constitutionality of another branch's actions. *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997) ("And our standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional."). This is just such a case. The plaintiffs' petition for injunctive and declaratory relief alleges that "GA-13 unlawfully suspends laws and deprives judges, sheriffs, and local governments of the powers and discretion granted to them by the laws of the State." Further, they allege the Disaster Act does "not authorize GA-13's usurpation of judicial and legislative authority. Instead, the Disaster Act empowers each branch of government to respond to disasters while leaving judicial functions to the discretion of the courts." As the trial court's letter to counsel explained:

> This exercise of judicial discretion [limited by GA-13] falls squarely within the purview of the judicial branch of our government. To be clear, the judges of this State may not abandon their responsibility in this regard, but neither may it be taken away from them by executive order.

Because the plaintiffs seek to correct an alleged violation of the separation of powers, our standing inquiry must be "especially rigorous." *Raines*, 521 U.S. at 819. The plaintiffs also assert "injury aris[ing] from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*," which means standing is "substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (quotation omitted).

Under the standards outlined above, the judicial plaintiffs lack standing to challenge the validity of GA-13. Our standing jurisprudence ensures that the executive and judicial branches resolve matters of public importance through the adversary system of justice in particular cases

involving parties who are genuinely, personally affected. Petitions from one set of judges to another do not fit this mold. That does not mean the issues raised in this lawsuit are unimportant or cannot be litigated. If a defendant in a bail hearing contends the executive order is unconstitutional and the suspended statutes should continue to provide the rule of decision, the judge has a duty to rule on that issue, and the losing side can challenge that ruling.

Neither branch may short-circuit this process. As discussed below, the executive branch cannot criminally prosecute judges for deciding cases based on what they understand the law to be. We appeal judicial decisions we don't like; we don't jail the judges. Nor can one judge file a lawsuit against the executive branch that asks another judge to clarify the rule of decision the plaintiff judge should apply in his or her courtroom, as the judicial plaintiffs have done here. "'[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for the cases to come to us, and when they do we normally decide only questions presented by the parties.'" *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (R. Arnold, J., concurring in denial of reh'g en banc)).

As the judicial plaintiffs point out, there is precedent for courts hearing challenges from judges about the acts of other branches of government that have injured the judges personally or have interfered with internal matters regarding the administration of the courts. The real parties in interest cite two cases in support of this rule, *United States v. Will*, 449 U.S. 200 (1980) and *Henry v. Cox*, 483 S.W.3d 119 (Tex. App.—Houston [1st Dist.] 2015), *rev'd*, 520 S.W.3d 28 (Tex. 2017). But neither of these cases indicates that a judge has a personal, legally cognizable stake in knowing the correct law to apply. Applying the correct law in each individual case is the judge's

job as an institutional matter. Difficulty in doing so does not give the judge standing to ask another judge to decide which source of law controls.

*United States v. Will* was a suit by thirteen United States District Judges against the United States over appropriations laws that eliminated judicial pay raises. 449 U.S. at 205–06. There was no challenge in *Will* to the judges' standing to sue, as no one questioned the judges' personal stake in their own salaries. *Henry v. Cox* addressed an injunction sought by a trial court (and local administrative) judge against the county judge of Galveston County. 483 S.W.3d at 126. The trial judge alleged that the county judge had illegally fired the local director of judicial administration and then sought to replace her. *Id.* The court of appeals concluded that the county judge's actions had compromised the judiciary's ability to perform its necessary functions, thereby establishing the injury necessary to grant the plaintiff standing. *Id.* at 149. *Henry* was a local dispute over funding for judicial employees and stands for the limited proposition that judges may have standing to sue another branch of government that interferes with the judiciary's ability to manage its internal administrative affairs. Neither *Will* nor *Henry* supports the judicial plaintiffs' position.

The judicial plaintiffs contend they have suffered an injury caused by GA-13 because the Governor usurped their judicial authority. This Court considered a similar argument in *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001). After the Mayor of Houston issued an executive order prohibiting sexual-orientation discrimination, City Council Member Robb Todd sued, seeking injunctive and declaratory relief. *Id.* at 299. Todd contended that the Mayor, "by issuing an executive order prohibiting discrimination based on sexual orientation in all city programs and activities, usurped Todd's power as a city council member." *Id.* at 304–05. After the trial court found that Todd had standing to sue, this Court, looking to United States Supreme Court precedent,

reversed. *Id.* at 305. The Court concluded that "Todd's injury as a city council member is vague and generalized, not personal and particularized. Todd does not and cannot challenge the anti-discrimination policy's actual operation because it does not apply to him." *Id.*

As in *Brown*, the judicial plaintiffs' usurpation argument alleges only a diminution of the power that they wield in their official capacities. They insist that GA-13 has interfered with their authority to set bail and determine the conditions of pretrial release. Although GA-13 may impact the performance of the judges' official duties, as in *Brown*, its "actual operation . . . does not apply to [them]." *See id.* Instead, it applies to jailed inmates by affecting their rights to pre-trial release. The judges have not been prevented from doing their duty to interpret the governing laws and issue rulings on personal bonds and other matters affected by GA-13. When faced with apparently inconsistent legal authority, the judges remain tasked with deciding which authority is dominant. This is the case for GA-13, just as it would be the case for any change in the law affecting judicial decisions in individual cases.

The judicial plaintiffs contend that *Brown* stands only for the holding that an individual council member lacks standing to claim an institutional injury for the council in its entirety. But *Brown* specifically notes that Todd did not sue "on the council's behalf and was not joined by any other council members in his suit." *Id.* at 306. *Brown* did not reject Todd's assertion of standing because he could not, as an individual, speak for the entirety of the city council. *Id.* Instead, the Court simply reviewed the nature of Todd's injury and determined that it was "not personal and particularized." *Id.* at 305. Similarly, the judicial plaintiffs have not established that GA-13's limits on their power to determine pretrial release constitute a "personal and particularized," legally cognizable injury sufficient to confer standing. We recognize that trial judges, unlike city

11

council members, act individually and not as part of a multi-member body. But *Brown* supports our conclusion that a judge suffers no personal and particularized injury from an executive order that tells the judge what substantive standards to apply to cases in the judge's court.

The judicial plaintiffs raise a second theory of injury, arguing that the executive order has sown confusion among the parties in their courts by creating new procedures at a crucial time for the judiciary. As is evident from the affidavits supporting the judicial plaintiffs' petition for a TRO, however, this pandemic has presented many extraordinary challenges to the judiciary. While GA-13 introduces new substantive standards, the real parties in interest do not explain with specificity how these changes produce a personal and particularized injury *to them*—as opposed to the parties whose cases are affected by the disruptions. Again, judges have no personal, legally cognizable stake in achieving clarity or ease of application in the law.

All of us in the judiciary should do what is in our power to make the court system continue to work as promised for all parties during these difficult times. But a desire for the legal system to operate efficiently does not confer standing to sue to make it so. *See Warth v. Seldin*, 422 U.S. 490, 498–500 (1975) (noting that standing serves to prevent courts from being "called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights"). If the parties who appear before a judge are confused about the law that applies to their case, the remedy lies in the judge, whose job is to resolve such confusion to the best of his or her ability, based on the applicable law. That the judge may also be confused about applicable law does not give the judge standing to sue the lawmaker. The judge's job is to determine and apply the law to individual cases, even if doing so is difficult.

12

Finally, the judges argue they have standing because the Governor has the power to enforce GA-13 against the judiciary by holding non-compliant judges criminally liable under Texas Government Code section 418.173.[2] The judges also express concern that the Attorney General posted on Twitter that "[t]he release of thousands of arrestees justly held for felony crimes would directly endanger the public, and my office will not stand for any action that threatens the health and safety of law-abiding citizens."[3] The judges have also reported monitoring of individual bail hearings by personnel from the Office of the Attorney General.

To establish standing based on a perceived threat of injury that has not yet come to pass, the "threatened injury must be certainly impending to constitute injury in fact"; mere "[a]llegations of possible future injury" are not sufficient. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citations omitted). A plaintiff does not need to be arrested and prosecuted before suing to challenge the constitutionality of a criminal law. He must, however, allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

Here, the judges have alleged a course of conduct affected with constitutional interest: making rulings in cases before them. And the judge's desired course of conduct may be proscribed

---

[2] Section 418.173 provides:

    (a) A state, local, or interjurisdictional emergency management plan may provide that failure to comply with the plan or with a rule, order, or ordinance adopted under the plan is an offense.

    (b) The plan may prescribe a punishment for the offense but may not prescribe a fine that exceeds $1,000 or confinement in jail for a term that exceeds 180 days.

TEX. GOV'T CODE § 418.173.

[3] Attorney General Ken Paxton (@KenPaxtonTX), TWITTER (Mar. 30, 2020, 10:26 AM), https://twitter.com/KenPaxtonTX/status/1244647288976412675.

by statute, assuming GA-13 validly prohibits it.  But there is no "credible threat of prosecution." Even assuming for the sake of argument that the Attorney General's tweet could have been understood as a genuine threat to criminally prosecute judges, the State correctly observes that the Attorney General cannot bring such a criminal prosecution without the participation of a district attorney.  Yet no threat of prosecution by a district attorney is alleged.  The State also readily concedes that the Governor cannot initiate such prosecutions.  The State is further correct that sending assistant attorneys general to observe proceedings in courtrooms is no evidence of a credible threat that judges face criminal prosecution.

Rather than threaten prosecution, the State in its briefing disclaims any intention by the Governor or the Attorney General to affirmatively enforce GA-13: "Defendants do not enforce EO-GA-13. . . .  EO-GA-13 itself 'envisions no role' for either of the Relators. . . .  If anyone is tasked with enforcing EO-GA-13, it is local district attorneys."  Relators' Br. at 21.  This is by no means a concession that the executive order is toothless.  To the extent GA-13 provides the governing rule of decision in an individual bail determination—a merits question we do not address—it must be followed, and it can be "enforced" against judges by a judicial ruling from a higher court.  Important for standing, however, is the State's acknowledgment that GA-13's enforcement will not come in the form of criminal prosecutions by the Governor or the Attorney General.  The plaintiffs offer nothing in response except unsubstantiated speculation that prosecutions will somehow materialize despite the State's concessions.  This is insufficient to establish a credible threat of prosecution.

Moreover, even if criminal prosecution of judges were genuinely threatened, the plaintiffs offer no reason to doubt that long-established principles of judicial immunity provide adequate

protection. The "right to have claims decided by judges who are free from potential domination by other branches of government" is "essential" to our "longstanding Anglo-American tradition of an independent Judiciary." *Will*, 449 U.S. at 217–18. Judicial immunity prevents such "domination by other branches" by giving a judge absolute immunity from liability for official judicial acts performed within the scope of his or her jurisdiction. *Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002); *see also Bradley v. Fisher*, 80 U.S. 335, 349 n.16 (1871) (noting that judicial immunity also protects the public, "whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences"). To the extent the judicial plaintiffs could establish a credible threat of criminal prosecution, their remedies would include the assertion of judicial immunity against any such prosecution. Their remedy would not be an order blocking GA-13 altogether.

For these reasons, the judicial plaintiffs lack standing. The trial court therefore lacked subject-matter jurisdiction to issue a temporary restraining order in their favor. Because temporary restraining orders are not appealable, the Governor and Attorney General have no remedy by appeal. *In re Office of Attorney Gen*., 257 S.W.3d 695, 698 (Tex. 2008) (per curiam). And because of the exigent circumstances, this case should be decided quickly. Accordingly, pursuant to Texas Rule of Appellate Procedure 52.8(c) and without hearing oral argument, we conditionally grant mandamus relief and direct the court to withdraw its temporary restraining order. We are confident that the trial court will comply, and the writ will issue only if the trial court fails to do so.

**OPINION DELIVERED:** April 23, 2020