Opinion issued August 31, 2006 



















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-00418-CV
__________
 
ROMAN MERKER ALPERT AND RENEE PICAZO, NEXT FRIEND OF
DANIEL ALPERT, Appellants
 
V.
 
KAREN S. GERSTNER, INDIVIDUALLY AND AS RECEIVER FOR THE
ROMAN MERKER ALPERT TRUST, THE DANIEL JAMES ALPERT
TRUST, AND THE ROBERT ALPERT 1996 CHILDREN’S TRUST, AND
DAVIS RIDOUT JONES & GERSTNER, L.L.P., Appellees
 

 
 
On Appeal from the Probate Court No. 2
Harris County, Texas
Trial Court Cause No. 305,232-404
 

 
 
O P I N I O N
          Appellants, Roman Merker Alpert and Renee Picazo, next friend of Daniel
Alpert (collectively, “the beneficiaries”), challenge the trial court’s rendition of
summary judgment in favor of appellees, Karen S. Gerstner (“Gerstner”), individually
and as receiver for the Roman Merker Alpert Trust, the Daniel James Alpert Trust,
and the Robert Alpert 1996 Children’s Trust (the “Trusts”), and Davis Ridout Jones
& Gerstner, L.L.P. (“Davis Ridout”), in the beneficiaries’ suit against Gerstner and
Davis Ridout for breach of fiduciary duty. In three issues, the beneficiaries contend
that the district court erred in ordering the case transferred to the statutory probate
court and that the probate court erred in granting appellees’ summary judgment
motion on the grounds that their claims against Gerstner are barred by judicial
immunity and that Davis Ridout did not owe them a fiduciary duty. 
          We reverse and remand the case for proceedings consistent with this opinion.
                                    Factual and Procedural Background
          The Alperts and Picazo are beneficiaries of three Trusts: the Roman Merker
Alpert Trust, the Daniel James Alpert Trust, and the Robert Alpert 1996 Children’s
Trust. Prior to the filing of the instant suit, a dispute arose regarding who was the
proper trustee of the Trusts. Mark Riley, a non-party to this appeal, filed suit in
Harris County Statutory Probate Court Number 2 (referred to hereafter as “the
underlying suit”), asserting that he was the trustee of the Trusts.


 The beneficiaries
intervened in the underlying suit, seeking either a declaration that Riley was not the
trustee of the Trusts or an order removing Riley as trustee. 
          On January 14, 2000, pursuant to section 64.001 of the Texas Civil Practice
and Remedies Code,


 the probate court, on its own motion, appointed Gerstner as
receiver for each of the Trusts “so that there will be no loss or material injury to the
Trust[s] pending the determination of the proper trustee of the Trust[s] and the
resolution of this suit.”


 The orders appointing Gerstner provided:
 . . . . 
          (iii)    that [the Receiver] shall take charge and keep possession
of all property of the Trust[s] in compliance with section
64.031 of the Texas Civil Practice & Remedies Code;
 
          (iv)    that, pursuant to section 64.031(5), the Receiver shall have
the same powers and duties as a trustee appointed pursuant
to the terms of the Indenture of Trust creating the Trust[s],
specifically including, but not limited to, the power to
invest the properties of the Trust[s], to sell properties of the
Trust[s], to pay debts and expenses attributable to the
Trust[s], to file income tax returns and, as appropriate,
amended income tax returns for the Trust[s], to pay any
and all taxes due with respect to the Trust[s], and to receive
any and all tax refunds due the Trust[s];
 
          (v)     that the Receiver shall be entitled to exercise the powers of
a trustee granted above without prior approval by this
Court or any party to this litigation; 
 
          (vi)    that the Receiver shall maintain appropriate books and
records for the Trust[s] and shall provide periodic reports
. . . ;
 
          (vii)   that the Receiver shall, immediately upon qualification,
have the right and power to take charge and keep
possession of any property of the Trust[s], including, but
not limited to, any property of the Trust[s] held in an
account at any bank, brokerage firm, or other financial
institution . . . ;
 
          . . . .
 
Shortly after appointing Gerstner, the probate court approved Gerstner’s application
to retain her law firm, Davis Ridout, “to assist the Receiver in the administration of
her duties, and as a means to minimize the cost of [the Receiver’s] services to the
Trusts.” 
          On July 25, 2003 and November 7, 2003, the probate court entered orders
accepting Gerstner’s resignation as receiver of the Trusts, subject to the court’s
approval of Gerstner’s final accountings. Gerstner also requested a judicial
discharge. The beneficiaries opposed Gerstner’s requests on the grounds that the
probate court did not have jurisdiction to rule on Gerstner’s liability and that Gerstner
acted in direct violation of the probate court’s directives. The beneficiaries also
objected to the fees sought by Gerstner and “the other professionals.” 
          In May 2004, the beneficiaries filed in district court the instant suit against
Gerstner and Davis Ridout for breach of fiduciary duty, alleging that “[d]uring the
more than three years that Gerstner was receiver” for the Trusts and that “as a result
of Gerstner’s failure to take any action to protect the stock portfolio assets of the
Trusts, including, but not limited to, her failure to seek and/or take advice regarding
diversification of, purchasing and selling the stock portfolios or otherwise make any
prudent changes in stock investments of the Trusts,” the stock portfolios of the Trusts
declined in value from approximately $600,000 to $13,000. They also alleged that
Gerstner “breached her fiduciary duties resulting from her acceptance of her position
as Receiver by failing to preserve and protect the assets of the Trusts” and “by failing
to exercise the powers of a trustee as required by the order.” Specifically, the
beneficiaries alleged that Gerstner “failed to act prudently with respect to decisions
regarding the merger of one of the companies owned by the Trusts,” “failed to collect
monies owed to the Trusts,” and failed to provide the beneficiaries with quarterly
reports. 
          In regard to Davis Ridout, the beneficiaries alleged that Davis Ridout
“performed Receivership duties in conjunction with Gerstner” and failed to monitor
Gerstner’s activities. They also alleged that Davis Ridout, “as attorney for the Trusts,
breached its fiduciary duties” to the beneficiaries “by failing to act with the utmost
fairness and in good faith, failing to inform [the beneficiaries] of all material facts and
provide full disclosure, charging the Trusts for unnecessary legal fees and failing to
act with loyalty and good faith in controlling and monitoring the activities as Gerstner
as Receiver.”
          In response to the petition filed in district court, appellees filed a motion to
transfer venue, a plea in abatement, and an answer. In their motion to transfer venue,
appellees stated that they reserved the right to seek transfer of the case to the statutory
probate court based on local rules, Chapter 15 of the Texas Civil Practice & Remedies
Code,


 and “other rules.” In an amended plea in abatement, appellees requested that
the district court “abate and dismiss [the beneficiaries’] suit against them because
these claims should only be asserted within [the probate court].” Appellees asserted
that abatement was mandatory because (1) the beneficiaries had not fulfilled a
condition precedent in bringing their suit in that they had not obtained permission
from the probate court to sue Gerstner in her individual capacity in the district court,
and (2) the probate court had dominant jurisdiction over the claims asserted in the
district court. Alternatively, appellees asserted that permissive abatement was
appropriate based on concerns of “comity, convenience, and the necessity for orderly
procedure in the trial of contested issues.” 
          In their response to appellees’ plea, the beneficiaries asserted that it was not
necessary to obtain the permission of the probate court to sue Gerstner in district
court and that the district court had dominant jurisdiction over the breach of fiduciary
claim because it was filed first in that court. The district court never ruled on
appellees’ plea in abatement. Instead, on August 20, 2004, the district court entered
an order transferring the case to the probate court. The district court’s order did not
explain the basis or the authority for the transfer and did not discuss any of the
arguments presented in appellees’ plea in abatement or in the beneficiaries’ responses
to the plea in abatement. 
          Following transfer, the lawsuit originally filed in district court appears to have
proceeded on a “sub-docket” of the probate court. The record indicates that the
probate court subsequently created a new cause number and assigned to that number
“all claims brought by or against the receiver relating to the performance of her duties
as the receiver or for fees and expenses of the receiver as well as any professional
fees incurred on behalf of the receiver.” 
          After the district court transferred the suit to the probate court, appellees filed
a summary judgment motion in the probate court suit, contending that any claims
asserted against Gerstner for actions taken by her as receiver for the Trusts were
barred by judicial immunity. Appellees further contended that, to the extent the
beneficiaries asserted that Davis Ridout acted as a receiver, judicial immunity also
applied to bar those claims. Finally, appellees argued that any claims against Davis
Ridout for breach of fiduciary duty failed as a matter of law because “no fiduciary
duty existed.” Appellees attached to their summary judgment motion the affidavit of
Gerstner, in which she testified that the probate court appointed her as the receiver
for the Trusts, that she served as the receiver until late 2003, that during this time “the
[c]ourt, through [her], controlled the Trusts,” that she “was granted authority by [the]
[c]ourt to hire [her] former law firm, [Davis Ridout], as [her] attorneys related to [her]
activities as Receiver,” and that in 2003 she and Davis Ridout resigned from their
“respective roles . . . subject to the approval of the final accountings and discharge”
by the probate court.” 
          The beneficiaries filed two responses to appellees’ summary judgment motion.
They argued that Gerstner was not protected by judicial immunity because the claims
against Gerstner were based on her failure to perform her duties and obligations as
a trustee for the Trusts, not on her “judicial functions.” The beneficiaries also argued
that Davis Ridout owed them fiduciary duties. After a hearing, the trial court granted
appellees’ summary judgment motion and struck certain evidence presented by the
beneficiaries. The trial court also severed the breach of fiduciary duty claims, making
the trial court’s order as to those claims final and appealable.
Transfer
          In their first issue, the beneficiaries contend that the district court erred in
ordering the case transferred to the probate court, the transfer order should be
vacated, and this case should be returned to the district court for consideration of the
plea in abatement or, as necessary, the merits. The beneficiaries note that transfer of
a case is not a proper remedy for a plea in abatement and that there is no authority
supporting the district court’s transfer of the case.


 They assert that the statutes and
rules cited in appellees’ motion to transfer venue do not authorize the district court’s
transfer of the case to the probate court.
          Appellees argue that the beneficiaries “waived any issues related to the transfer
of this case from the district court to the probate court because they failed to make an
objection, request, or motion to the district court or probate court stating the grounds
of their complaint.” In response, the beneficiaries emphasize our sister court’s
pronouncement in Polk v. Southwest Crossing Homeowners Ass’n, that “[i]f a district
court transfers a case that substantively does not qualify for transfer, the court that
receives the improperly transferred case lacks jurisdiction and the error is reversible
on appeal.” 165 S.W.3d 89, 94 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).
          We agree that an order transferring a case that falls outside the jurisdictional
limits of the receiving court would be reversible error, regardless of whether a party
made a timely complaint concerning the transfer. Aternatively, appellees argue that
the district court did not err in transferring the case because “transfer was proper
under the district court’s broad discretion,” that transfers between district courts and
statutory county courts are permissible, and that, under the pertinent local rule, any
case may be transferred from one court to another.  
          The Texas Constitution and the Texas Rules of Civil Procedure expressly
provide for the transfer of cases from one district court to another district court. 
Section 11 of article V of the Texas Constitution provides that “[d]istrict judges may
exchange districts, or hold courts for each other.” Tex. Const. art. V, § 11. Texas
Rule of Civil Procedure 330(e) states that “[w]here in such county there are two or
more district courts having civil jurisdiction, the judges of such courts may, in their
discretion, exchange benches or districts from time to time, and may transfer cases
and other proceedings from one court to another.” Tex. R. Civ. P. 330(e). 
Accordingly, Texas courts have concluded that “[t]rial courts have broad discretion
to exchange benches or transfer cases.” In re Houston Lighting & Power Co., 976
S.W.2d 671, 672 (Tex. 1998) (citing European Crossroads’ Shopping Ctr., Ltd. v.
Criswell, 910 S.W.2d 45, 52 (Tex. App.—Dallas 1995, writ denied)). Moreover, a
party does not have a protected proprietary interest in having its case resolved by a
particular district judge or court within the county of filing. See Polk, 165 S.W.3d at
93; In re Rio Grande Valley Gas Co., 987 S.W.2d 167, 173 (Tex. App.—Corpus
Christi 1999, no pet.); Criswell, 910 S.W.2d at 51. However, a trial court’s
discretion to transfer cases is not unlimited. In re Rio Grande Valley Gas Co., 987
S.W.2d at 176.        
          Section 74.093 of the Texas Government Code provides that district and
statutory county court judges shall adopt local rules of administration providing for,
among other things, the assignment, docketing, and transfer of cases, subject to the
jurisdictional limitations of the district courts and statutory county courts.


 Tex.
Gov’t Code Ann. § 74.093 (Vernon 2005); see also Polk, 165 S.W.3d at 93
(“Counties may adopt local rules to further govern the transfer of cases from one
district court to another if they are not inconsistent” with the rules.); In re Stark, 126
S.W.3d 635, 639 (Tex. App.—Beaumont 2004, orig. proceeding [mand. denied])
(“District and statutory county court judges in each county of this state may adopt
local rules of administration that provide for the transfer of all cases, subject to
jurisdictional limitations of those courts.”); In re Rio Grande Valley Gas Co., 987
S.W.2d at 176 (“District courts are statutorily mandated to adopt local rules of
administration which provide for rules governing transfer of cases.”). Section 74.093
further provides that “[r]ules relating to the transfer of cases or proceedings shall not
allow the transfer of cases from one court to another unless the cases are within the
jurisdiction of the court to which it is transferred.” Tex. Gov’t Code Ann. § 74.093. 
          Based on these provisions of the Government Code, courts have held that a
district court, where authorized by a local rule, may transfer a case to a statutory
county court when that court has jurisdiction over the subject matter of the dispute. 
In re Siemens Corp., 153 S.W.3d 694, 697 (Tex. App.—Dallas 2005, no pet.)
(“Section 74.093 authorizes the adoption of local rules of administration providing
for the transfer of cases from district courts in Dallas County to statutory county
courts in Dallas County.”); see also In re Stark, 126 S.W.3d at 639 (holding that
section 74.093 authorizes transfers between district court and statutory county courts
of county when authorized by local rules). 
          Local rule 3.2.5 of the Harris County District Courts further provides:
Agreement: Any case may be transferred from one court to another court
by written order of the Administrative Judge of the Civil Trial Division
or by written order of the judge of the court from which the case is
transferred; provided, however, that in the latter instance the transfer
must be with the written consent of the court to which the case is
transferred. 
 
Harris (Tex.) Civ. Dist. Ct. Loc. R. 3.2.5.


 The beneficiaries assert that this rule
does not expressly authorize a transfer of a case from a district court to a statutory
probate court. They also note that local rule 3.1 requires that a case filed in the civil
trial division “shall be assigned randomly to the docket of one of the courts in that
Division” and that the case remains on that court’s docket unless transferred “to
another court by written order of the Administrative Judge of the Civil Trial Division
or by written order of the judge of the court from which the case is transferred.” See
id.; Harris (Tex.) Civ. Dist. Ct. Loc. R. 3.1. The beneficiaries argue that, because
rule 3.1 limits the assignment of cases filed in the civil trial division to a civil district
court, rather than a statutory county court or a statutory probate court, transfers to
“another court” pursuant to rule 3.2.5 are similarly limited to a district court rather
than to a statutory county court. 
          That interpretation of rule 3.2.5, however, would impose an unstated limitation
on the scope of a district court’s authority to transfer a case when appropriate. Rule
3.2.5 expressly provides for the transfer of any case “from one court to another
court,” either by written order of the administrative judge or by written order of the
judge of the court from which the case is transferred. The local rule’s only express
requirements are that a district court must enter a written order transferring the case,
and it must obtain the written consent of the court to which the case is being
transferred.


 
          Although the district court here entered a written order transferring the lawsuit
to the probate court, the record does not contain the probate court’s written consent
to the transfer. However, as noted by our sister court in Polk, the requirement for
written consent is procedural, not substantive, and “a failure to comply with [a] local
rule’s procedural requirement does not deprive a court of its jurisdiction.” 165
S.W.3d at 94. Accordingly, we hold that the district court did not err in ordering the
case transferred to the probate court and deny the beneficiaries’ request to vacate the
transfer order.
          We overrule the beneficiaries’ first issue.
Judicial Immunity
          In their second issue, the beneficiaries contend that, as a receiver with all the
powers and benefits of a trustee, Gerstner is not judicially immune from their breach
of fiduciary duty claim. The beneficiaries assert that a receiver appointed to act as
a fiduciary is not performing a normal judicial function and that providing Gerstner
with immunity is not justified by overriding policy considerations. The beneficiaries
also reject, as too simplistic, a rule that would render all court-appointed receivers
absolutely immune from all liability for conduct taken during the course of their
receivership appointment.
          To prevail on a summary judgment motion, a movant has the burden of proving
that it is entitled to judgment as a matter of law and that there is no genuine issue of
material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995). We may affirm a summary judgment only when the record shows that a
movant has disproved at least one element of each of the plaintiff’s claims or has
established all of the elements of an affirmative defense as to each claim. Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). We must accept as true
evidence in favor of the nonmovant and indulge every reasonable inference and
resolve all doubts in favor of the nonmovant. Cathey, 900 S.W.2d at 341. When, as
in this case, a defendant moves for summary judgment based on its own affirmative
defense, the defendant has the burden of proving each element of its defense as a
matter of law. See Montgomery v. Kennedy, 669 S.W.2d 309, 310–11 (Tex. 1984). 
A summary judgment must stand or fall on the grounds expressly presented in the
motion. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 339–41 (Tex.
1993).
          An officer of a court who is entitled to the protection of derived judicial
immunity “receives the same immunity as a judge acting in his or her official judicial
capacity—absolute immunity from liability for judicial acts performed within the
scope of jurisdiction.” Dallas County v. Halsey, 87 S.W.3d 552, 554 (Tex. 2002).
The policy reasons for judicial immunity, to protect both the individual judge as well
as the public’s interest in an independent judiciary, “are also implicated when a judge
delegates or appoints another person to perform services for the court or when a
person otherwise serves as an officer of the court.” Id. In such a case, “the immunity
attaching to the judge follows the delegation, appointment, or court employment,”
and the person appointed to perform services for the court or serving as an officer of
the court “also enjoys absolute immunity, known as derived judicial immunity.” Id. 
The policy underlying derived judicial immunity “guarantee[s] an independent,
disinterested decision-making process” and “prevent[s] the harassment and
intimidation that might otherwise result if disgruntled litigants could vent their anger
by suing either the person who presented the decision maker with adverse
information, or the person or persons who rendered an adverse opinion.” Delcourt
v. Silverman, 919 S.W.2d 777, 782 (Tex. App.—Houston [14th Dist.] 1996, writ
denied).
          Texas courts use a functional approach in determining whether a person is
entitled to the protection of derived judicial immunity. See Halsey, 87 S.W.3d at
554–57; B.K. v. Cox, 116 S.W.3d 351, 357 (Tex. App.—Houston [14th Dist.] 2003,
no pet.); Delcourt, 919 S.W.2d at 782; Ramirez v. Burnside & Rishebarger, L.L.C.,
No. 04-04-00160-CV, 2005 WL 1812595 (Tex. App.—San Antonio Aug. 3, 2005,
no pet.) (memo op.). This approach focuses on whether the person seeking immunity
is “intimately associated with the judicial process and if that person exercises
discretionary judgment comparable to that of the judge.” Halsey, 87 S.W.3d at 554
(citing Delcourt, 919 S.W.2d at 782). Officers of the court who are integral parts of
the judicial process, “such as court clerks, law clerks, bailiffs, constables issuing
writs, and court-appointed receivers and trustees are entitled to judicial immunity if
they actually function as an arm of the court.” Delcourt, 919 S.W.2d at 781
(emphasis added); see also Byrd v. Woodruff, 891 S.W.2d 689, 708 (Tex.
App.—Dallas 1994, writ dism’d by agrm.) (stating that “judicial officers granted
absolute immunity, such as court clerks, law clerks, bailiffs, constables issuing writs,
and court-appointed receivers and trustees,” are accountable to appointing court and
act at discretion of appointing court). In short, we look at the nature of the function
performed, not the identity of the actor, and consider “whether the court officer’s
conduct is like that of the delegating or appointing judge.” Halsey, 87 S.W.3d at 555. 
Whether a court-appointed receiver with powers similar to those of Gerstner is
entitled to derived judicial immunity for the performance of those powers is one of
first impression. Accordingly, we consider how Texas courts have applied the
functional approach in a number of contexts.
          In Halsey, the supreme court addressed whether a court reporter was absolutely
immune from liability for errors committed in the preparation of a court reporter’s
record. 87 S.W.3d at 553. The county sued the reporter seeking to recover its
payment to her. Id. The supreme court held that “because court reporters do not
engage in a discretionary function or exercise judgment comparable to that of a judge
while preparing a reporter’s record, they are not entitled to derived judicial immunity
for that function.” Id. The court noted that preparation of the record did “not
necessitate the use of discretion, but is more in the nature of a ministerial or
administrative task.” Id. at 557. 
          In Clements v. Barnes, the supreme court recognized that a court-appointed
interim bankruptcy trustee was entitled to derived judicial immunity. 834 S.W.2d 45,
46 (Tex. 1992). The trustee, who had been appointed by a bankruptcy court, was
alleged to have wrongfully claimed ownership of some property and tortiously
interfered with the sale the property. Id. Noting that other courts had held that
bankruptcy trustees function as “arms of the court” and are immune from liability for
actions grounded in their conduct as trustees, the court held that the trustee was
protected from liability by derived judicial immunity. Id. The court further stated
that a trustee loses derived judicial immunity only when the trustee acts in “the clear
absence of all her jurisdiction” and “outside the scope of her authority.” Id.; see also
City of Houston v. West Capital Fin. Servs. Corp., 961 S.W.2d 687, 689 (Tex.
App.—Houston [1st Dist.] 1998, pet. dism’d w.o.j.) (“Judges enjoy absolute judicial
immunity from liability for judicial acts, no matter how erroneous the act or how evil
the motive, unless the act is performed in the clear absence of all jurisdiction.”).          In B.K., our sister court considered whether a hospital and a doctor were
entitled to derived judicial immunity for claims based on their alleged failure to report
suspected child abuse discovered during the performance of psychological
examinations ordered by the trial court. 116 S.W.3d at 355–56. The court
determined that the doctor and hospital assisted the court in performing “a judicial
function of evaluating this family in an effort to determine custody issues” and that
they were acting “within the scope of the [trial court’s] order because their acts—
whether negligent or not–related to the family’s evaluation.” Id. at 358. The court
concluded that the hospital and doctor were entitled to derived judicial immunity. Id. 
          Similarly, in Delcourt, the same court held that a psychologist appointed by a
court to meet with family members in a custody dispute was entitled to the protection
of derived judicial immunity for tort claims arising out of her participation in the case. 
919 S.W.2d at 782–83. The court noted that, without such immunity, mental health
professionals would be reluctant to accept such appointments and judges would be
inhibited from performing their duties. Id. at 783. The court also held, in the same
case, that a guardian ad litem appointed under the Family Code to represent the best
interests of the child and provide the court with impartial recommendations was
entitled to derived judicial immunity for actions taken within the scope of his
appointment, provided that the appointment contemplated the ad litem’s acting as an
“extension of the court.” Id. at 783–86. 
          In Ramirez, a memorandum opinion, the San Antonio Court of Appeals held
that a court-appointed receiver was immune from liability for claims that she falsely
represented the condition of a house purchased from the receivership estate. 2005
WL 1812595, at *1. In support of its holding, the Ramirez court stated that a
“receiver is an agent of the court.” Id. (citing Spigner v. Wallis, 80 S.W.3d 174, 183
(Tex. App.—Waco 2002, no pet.). The order appointing the receiver empowered the
receiver “to determine actual or potential claimants and to maintain and preserve the
property” and, in his sole discretion, to “sell, negotiate, transfer, or redeem” property. 
Id. at *1–2. The court concluded that “[t]he receiver’s role in selling the property was
to assist the receivership court in performing its duties,” that the trial court granted
the receiver broad discretion, and that, under the functional approach, the receiver
was entitled to derived judicial immunity. Id. The court rejected the argument that
the receiver was not empowered to “make false promises” concerning the condition
of property by noting that
[o]nce an individual is cloaked with derived judicial immunity because
of a particular function being performed for a court, every action taken
with regard to that function—whether good or bad, honest or dishonest,
well-intentioned or not—is immune from suit. . . . Once applied to the
function, the cloak of immunity covers all acts, both good and bad.
 
Id. at *2 (citing B.K., 116 S.W.3d at 357).
          The beneficiaries agree with the general principles of the functional approach
applied in the above cases, but assert that the facts presented in this case are
distinguishable and that Gerstner was not acting “as an arm of the court” when
performing her duties. They refer us to Byrd, in which the Dallas Court of Appeals
concluded that a guardian ad litem appointed under Texas Rule of Civil Procedure
173 to represent a minor during settlement proceedings served as a personal
representative for the minor. 891 S.W.2d at 707–08. Because the ad litem
represented the minor’s interests, the ad litem was not entitled to derived judicial
immunity for breach of his duty to the minor. Id. In support of its holding, the court
noted that the ad litem was not an agent of court, had no delegated authority to act in
the name of the court, and, aside from removing the ad litem, the court had no
discretion to control the ad litem’s actions. Id. at 708.
          In support of their argument that Gerstner is not entitled to derived judicial
immunity in her capacity as a trustee in this case, the beneficiaries rely on Southwest
Guaranty Trust Co. v. Providence Trust Co., 970 S.W.2d 777 (Tex. App.—Austin
1998, pet. denied), and Edwards v. Pena, 38 S.W.3d 191, 196 (Tex. App.—Corpus
Christi 2001, no pet.). These cases more narrowly apply the concept of derived
judicial immunity and suggest that a receiver or trustee, like Gerstner, would not be
absolutely immune from liability for her failure to properly manage or invest trust
property subject to the receivership. 
          In Southwest Guaranty, a trial court appointed a trustee and authorized that
trustee to exercise its discretion in purchasing a type of annuity “that would best serve
the minor plaintiffs according to the terms of the trust.” 970 S.W.2d at 780. A
successor trustee brought suit against the court-appointed trustee, alleging that the
trustee had breached its fiduciary duty to the beneficiaries of the trusts and committed
negligence in “failing to properly exercise its investment and disbursement
discretion” and “failing to properly invest, manage, and diversify the trusts’ assets.” 
Id. at 781. The Austin Court of Appeals agreed that the trustee “was acting at the
discretion” of the court, but noted that the order appointing the trustee afforded the
trustee considerable discretion in purchasing the appropriate type of annuity based
on a number of factors, including the age of the beneficiaries. Id. at 782–83. 
Although the trustee argued that it had acted reasonably and in good faith in
purchasing the annuities, the court noted that questions of reasonableness or
negligence are generally for the jury to decide. Id. Thus, the court refused to hold,
as a matter of law, that the trustee was entitled to derived judicial immunity. Id. at
783. 
          In Edwards, a guardian appointed by the court alleged that all of his actions
taken as guardian were protected by judicial immunity. 38 S.W.3d at 196. The
Corpus Christi Court of Appeals rejected this claim, stating that “[i]n the case of a
guardian, the activities undertaken are not functions of the court.” Id. The court
further noted that a “guardian takes possession of a ward’s property and manages the
estate of the ward as a prudent person would manage” his own property, and that
“[p]ossessing and managing property are not activities generally undertaken by
courts.” Id. Thus, the court held that the guardian was not entitled to the protection
of absolute judicial immunity.” Id.     
          Two older cases from the Texas Courts of Civil Appeals also suggest that a
receiver, like Gerstner, may be liable for losses or damage arising out of a failure to
exercise good faith or ordinary care in managing the assets of a receivership and 
would not be entitled, as a matter of law, to absolute derived judicial immunity for
actions taken as receiver. For example, in Harrison v. Coutret, suit was brought
against a court-appointed receiver for damages “alleged to have resulted from the acts
and omissions of [the receiver] while serving as receiver of the estates.” 157 S.W.2d
454, 455 (Tex. Civ. App.—San Antonio 1941, writ ref’d w.o.m). The jury found for
the plaintiffs, and the receiver contended on appeal that the trial court erred in
denying his motion for instructed verdict. Id. In reversing the trial court’s judgment
against the receiver, the court noted that the order appointing the receiver provided
the receiver with very broad powers in conducting the businesses belonging to the
estate and that the order authorized the receiver to do everything he did. Id. at
455–56. However, the court concluded that “having acted within the authority given
him in the order appointing him, he is not responsible for any loss which may have
accrued, unless he acted in bad faith or failed to use ordinary care and discretion in
the management of the business.” Id. at 456 (emphasis added). 
          Similarly, in Groesbeck Cotton Oil Gin & Compress Co. v. Oliver, suit was
brought against a court-appointed receiver alleging that the receiver was grossly
negligent in allowing money to remain in banks that failed. 97 S.W. 1092, 1093
(Tex. Civ. App.—1906, writ ref’d). The jury found that the receiver discharged his
duties with ordinary care. Id. at 1094–95. The plaintiffs complained about the jury
charge, which stated that “among the duties the receiver is bound to discharge is to
use ordinary care and diligence to safely keep the funds that come into his possession,
and the only question for you to determine under the testimony is whether or not he
used such care and diligence in placing and keeping said money in said banks.” Id. 
In determining whether this charge was proper, the court considered the statute that
empowered receivers to “take charge and keep possession of the property, to receive
rents, collect, compound for, compromise demands, etc.” Id. at 1094. The court
stated
The statute in reference to receivers seems to contemplate that the
receiver shall be the custodian of the fund and handle it in connection
with the administration[] and nowhere specifies how money shall be
kept by him, other than that he shall be subject to the orders of the court. 
The condition of his bond, as prescribed by statute, is that “he will
faithfully discharge all of the duties of receiver in the action . . . and
obey the orders of the court therein.” No order was made by the court
with reference to the fund. The receiver is not an insurer of the safety
of the property, but the measure of his responsibility is analogous to that
of guardian and administrator, and, when he uses ordinary care in his
duties—that is, such care as an ordinarily prudent person would use in
the handling of his own property—he has fulfilled the measure of his
duty as such.
 
Id. (emphasis added). 
          The parties have referred us to a number of federal cases that address derived
judicial immunity. However, the cited federal cases do not provide any guidance on
the scope of derived judicial immunity afforded to receivers with powers and duties
similar to those held by Gerstner.
          Moreover, none of the above Texas cases squarely addresses how derived
judicial immunity interplays with any duty a receiver owes to conduct a receivership
in good faith or use ordinary care and discretion in the management of trust assets
subject to the receivership. Gerstner argues that, as long as she was acting within the
scope of her authority, she is entitled to immunity, apparently regardless of whether
she exercised good faith and ordinary care in the performance of her duties. The
beneficiaries, of course, dispute this proposed application of derived judicial
immunity. Because our focus is on the functions actually performed by Gerstner, not
her title, see Halsey, 87 S.W.3d at 55, a review of her powers and duties as a receiver
for the Trusts is in order.
          The Texas Civil Practice and Remedies Code provides that a court may appoint
a receiver in “an action by a creditor to subject any property or fund to his claim,” “an
action between partners or others jointly owning or interested in any property or
fund,” and “in any other case in which a receiver may be appointed under the rules
of equity.” Tex. Civ. Prac. & Rem. Code Ann. § 64.001(2), (3), (6) (Vernon Supp.
2005). The code further provides, “[s]ubject to the control of the court, a receiver
may: (1) take charge and keep possession of the property; (2) receive rents; (3) collect
and compromise demands; (4) make transfers; and (5) perform other acts in regard to
the property as authorized by the court.” Tex. Civ. Prac. & Rem. Code Ann. §
64.031 (Vernon 1997). Here, the probate court was presented with a dispute
concerning the proper trustee of the Trusts. The court, on its own motion, found that
it would be “in the best interest of the beneficiaries” to appoint a receiver to
administer the properties of the Trusts and, as authorized by the Texas Civil Practice
and Remedies Code, appointed Gerstner as receiver for each of the Trusts in order to
prevent “loss or material injury to the Trust[s] pending the determination of the
proper trustee of the Trust[s] and the resolution of thus suit.” The parties agreed to
Gerstner’s appointment, and the court authorized her to, among other things “take
charge and keep possession of all property of the Trust[s]” and further provided that
Gerstner “shall have the same powers and duties as a trustee appointed pursuant to
the terms of the Indenture of Trust creating the Trust[s], specifically including, but
not limited to, “the power to invest the properties of the Trust[s].” The order also
authorized Gerstner to exercise her powers “without prior approval by this Court or
any party to this litigation.” 
          The trial court afforded Gerstner broad discretion, but the primary focus of our
inquiry is on whether the functions performed by Gerstner were “intimately
associated with the judicial process” and whether her discretion was “comparable to
that of a judge.” Halsey, 87 S.W.3d at 554. Under the functional approach, we hold
that Gerstner is entitled to derived judicial immunity to the extent that she was
authorized, as a receiver of the property in the Trusts, to take charge and keep
possession of the Trust property in accordance with section 64.031 of the Texas Civil
Practice & Remedies Code, and to the extent that she was appointed to assist the court
in determining the proper trustee of the Trusts and to make an inventory of the
property subject to the receivership. These functions are intimately associated with
the judicial process and involve the exercise of discretionary judgment comparable
to that of a judge. See Halsey, 87 S.W.3d at 554. 
          However, we further hold that Gerstner is not entitled to derived judicial
immunity to the extent that she may have breached any fiduciary duties to the
beneficiaries in failing to exercise good faith or ordinary care in protecting the stock
portfolio assets of the Trusts. In this latter capacity, Gerstner was acting as a
representative of the interests of the beneficiaries and not as an agent of the Court. 
See Byrd, 891 S.W.2d at 707; see also See Ins. Co. of N. Am. v. Morris, 981 S.W.2d
667, 674 (Tex. 1998) (fiduciary duties arise in trustee relationships); Hoenig v. Tex.
Commerce Bank, 939 S.W.2d 656, 661 (Tex. App.—San Antonio 1996, no writ)
(noting duty to properly manage, supervise, and safeguard trust property); 
Herschbach v. City of Corpus Christi, 883 S.W.2d 720, 735 (Tex. App.—Corpus
Christi 1994, writ denied) (noting duty of good faith, fair dealing, loyalty, and fidelity
over trust’s affairs and its principal); Tex. Prop. Code Ann. § 113.051 (Vernon
Supp. 2005) (stating that [t]he trustee shall administer the trust in good faith
according to its terms and this subtitle”). 
          We recognize that, according to the terms of the appointing orders and the
Texas Civil Practice & Remedies Code, Gerstner was “subject to the control of the
court” and was accountable to the court, and we presume that the court could have
removed Gerstner at any time. We cannot say, however, that her functions
concerning the investment and management of a stock portfolio are intimately
associated with the judicial process or that, when performing these functions,
Gerstner was acting as the functional equivalent of a judge. See Halsey, 87 S.W.3d
at 557 (noting that in preparing record, court reporter does not participate in judicial
decision making process and thus court reporter “cannot be construed as the
functional equivalent of a judge”); Edwards, 38 S.W.3d at 196 (“[p]ossessing and
managing property are not activities generally undertaken by courts”); City of
Houston, 961 S.W.2d at 690 (“key consideration in determining whether an officer
is entitled to judicial immunity is whether the officer’s conduct is a normal function
of the delegating or appointing judge”). Thus, even though Gerstner was appointed
by the court and was acting pursuant to a court order, these facts alone do not
conclusively establish her entitlement to derived judicial immunity for all of her
functions as receiver.


 See Sw. Guar., 970 S.W.2d at 782–83.  
          Accordingly, we hold that the trial court erred in granting summary judgment
in favor of Gerstner on the beneficiaries’ claim related to her fiduciary duties to
properly manage and invest trust property.


 
          We sustain the beneficiaries’ second issue.
Fiduciary Duty of Attorney for Receiver
          In their third issue, the beneficiaries contend that the trial court erred in
granting Davis Ridout summary judgment on the ground that it did not owe the
beneficiaries a fiduciary duty. Davis Ridout, citing Thompson v. Vinson & Elkins,
argues that it owed no fiduciary duty to the beneficiaries. See 859 S.W.2d 617, 624
(Tex. App.—Houston [1st Dist.] 1993, writ denied) (“Although a fiduciary
relationship may exist between the beneficiary of a trust and a trustee, under the facts
presented here, no fiduciary relationship exists between the beneficiary of the trust
and the attorney representing the trustee.”).
          In their petition, the beneficiaries alleged that Davis Ridout “performed
receivership duties in conjunction with Gerstner” and failed to monitor her activities. 
The beneficiaries further alleged that Davis Ridout, “as attorney for the Trusts,
breached its fiduciary duties” to the beneficiaries “by failing to act with the utmost
fairness and in good faith, failing to inform [the beneficiaries] of all material facts and
provide full disclosure, charging the Trusts for unnecessary legal fees and failing to
act with loyalty and good faith in controlling and monitoring the activities of Gerstner
as receiver.”
          Davis Ridout’s sole ground in its summary judgment motion was that it was
retained “solely to represent Gerstner in her capacity as receiver,” and therefore “did
not owe the beneficiaries any duty.” Davis Ridout attached to its summary judgment
motion testimony of Gerstner that she “was granted authority by [the probate court]
to hire [her] former law firm, Davis Ridout, as [her] attorneys related to her activities
as Receiver.” 
          However, the order approving Gerstner’s application to retain counsel also
states that Gerstner was authorized to retain Davis Ridout “to assist in the
administration of the Trusts.” In their response to Davis Ridout’s summary judgment
motion, the beneficiaries asserted that Gerstner and Davis Ridout blurred any
distinction between their roles. They also presented evidence that Gerstner had filed
applications for fees with the probate court that stated that such fees were “for
services performed by me and members of my firm in the administration of my duties
as Receiver” of the Trusts. 
          In contrast to the plaintiffs in Thompson, the beneficiaries have presented
summary judgment evidence raising a fact issue as to whether Davis Ridout was
retained to work on behalf of the beneficiaries, providing receivership services, or
legal services on behalf of Gerstner. Davis Ridout failed to conclusively establish 
as a matter of law that it owed no fiduciary duties to the beneficiaries. 859 S.W.2d
at 624. Accordingly, we hold that the trial court erred in granting summary judgment
on the beneficiaries’ breach of fiduciary duty claims against Davis Ridout. 
          We sustain the beneficiaries’ third issue.
 
 
                                                             Conclusion
          We reverse the case and remand for proceedings consistent with this opinion.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Jennings, Alcala, and Price.